# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00610-COA

**GLORIA CARTER** APPELLANT

**v.**

**TOTAL FOOT CARE AND DR. MICHAEL** APPELLEES
**ZALESKI, INDIVIDUALLY AND IN HIS**
**PROFESSIONAL CAPACITY**

DATE OF JUDGMENT: 06/04/2021
TRIAL JUDGE: HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED: LAMAR COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: ABBY GALE ROBINSON
ATTORNEYS FOR APPELLEES: BENJAMIN BLUE MORGAN
ROMNEY HASTINGS ENTREKIN
PEELER GRAYSON LACEY JR.
NATURE OF THE CASE: CIVIL - MEDICAL MALPRACTICE
DISPOSITION: AFFIRMED - 05/17/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., WESTBROOKS AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. On February 21, 2019, Dr. Michael Zaleski (Dr. Zaleski) removed Gloria Carter's (Carter) left gangrenous toe at Total Foot Care. On February 19, 2020, Carter filed a complaint in the United States District Court for the Southern District of Mississippi against Total Foot Care and Dr. Zaleski, alleging a number of claims including medical malpractice. On October 13, 2020, the district court dismissed the case. On October 15, 2020, Carter filed a complaint in the Lamar County Circuit Court, alleging the same claims. On December 8, 2020, Total Foot Care and Dr. Zaleski served Carter with their requests for admissions.

Carter failed to timely respond to them. On January 15, 2021, Total Foot Care and Dr. Zaleski filed a Motion for Acknowledgment of Deemed Admissions and for Summary Judgment, alleging that the failure to deny the requests for admissions conclusively established that Dr. Zaleski did not breach the standard of care. On June 4, 2021, the trial court granted summary judgment for Total Foot Care and Dr. Zaleski. Carter appeals, and raises a number of issues, including whether the trial court erred in granting summary judgment. Upon review of the record, this Court finds that the trial court did not err in granting summary judgment for Total Foot Care and Dr. Zaleski.

## FACTS AND PROCEDURAL HISTORY

¶2.    In January 2019, Carter began seeing Dr. Zaleski at Total Foot Care for problems related to a preexisting foot and circulation issue. Dr. Zaleski told Carter during her visits that she needed to visit a "vascular specialist" because she was "in danger of losing her gangrenous left fifth toe." Carter never saw a specialist. On February 21, 2019, Carter visited Dr. Zaleski, and he removed her gangrenous toe at the Total Foot Care office. On February 19, 2020, Carter filed a complaint in federal court, alleging a number of claims including medical malpractice.[1] During the course of that lawsuit, Total Foot Care and Dr. Zaleski served Carter interrogatories and requests for production. Carter served Total Foot Care and Dr. Zaleski interrogatories, requests for production, and requests for admissions. Leslie Ross, The Mississippi State Board of Medical Licensure, and the past and current

---

[1] In the federal court, Carter sued Leslie Ross, The Mississippi State Board of Medical Licensure, the "past and current Director of the Board," Total Foot Care, and Dr. Zaleski. In the circuit court, Carter only sued Total Foot Care and Dr. Zaleski.

Director of the Board were dismissed.  On October 13, 2020, the district court dismissed the case for lack of jurisdiction.

¶3.     On October 15, 2020, Carter filed a complaint in the circuit court and alleged the same claims.  On December 8, 2020, Total Foot Care and Dr. Zaleski served Carter with interrogatories, requests for production of documents, and requests for admissions.  Among other things, Total Foot Care and Dr. Zaleski asked Carter to admit "that Dr. Zaleski did not breach the standard of care by surgically removing [her] left fifth toe."  Instead of responding to the requests for admissions, on December 9, 2020, Carter filed a "Motion to Consolidate Interrogatory, RFA, and RFP from the District Court with this Court in the Interest of Judicial Economy for Both Parties."  Carter argued that the discovery completed for the lawsuit filed in the federal court should be consolidated for the circuit court to avoid "repetitive discovery."  Total Foot Care and Dr. Zaleski opposed the motion, arguing that Carter provided no legal authority to support her motion, that the claims in the circuit court were different, and that Carter's answers to their requests in federal court were "non-responsive."  The trial court never ruled on this motion.

¶4.     On January 15, 2021, Total Foot Care and Dr. Zaleski filed a Motion for Acknowledgment of Deemed Admissions and for Summary Judgment after Carter failed to timely respond to their requests for admissions.  They argued that Carter's failure to timely respond created an admission, which "conclusively established that Dr. Zaleski did not breach the standard of care in this matter."

¶5.     On January 21, 2021, Carter filed her response in opposition to the motion for

summary judgment. In her response, Carter argued that she informed Total Foot Care and Dr. Zaleski that "[d]iscovery in this case was done in the District Court." Carter also argued that Total Foot Care and Dr. Zaleski's "motion is severely flawed because they did not have an expert witness to state the standard of care . . . ." Further, Carter argued that the motion should be denied because she "provided expert testimony as to the standard of care in a medical malpractice case as well as supporting affidavits . . . ."

¶6.     Carter attached an expert report from Dr. Michael L. Boykins to her response. Within it, Dr. Boykins opined that Carter "did not receive the proper standard of care." However, Carter did not attach an affidavit from Dr. Boykins. Carter also attached her own affidavit to her response. In her affidavit, Carter stated: (1) she was not told to see another doctor before her toe was removed; (2) she did not know Dr. Zaleski did not have admitting privileges to any hospital; (3) she was coerced by Dr. Zaleski into letting him remove her toe; (4) the room where her toe was removed was not sterile; (5) because the procedure was not performed in a sterile environment, she now suffers from sepsis and kidney failure; (6) she was able to drive her vehicle and move with "mobility" prior to her toe being removed, but now she does not "have mobility without assistance of a person" and cannot drive; and (7) she has to undergo dialysis once a week.[2] Carter's attorney never filed a motion to withdraw or amend the admissions that by operation of Rule 36 of the Mississippi Rules of Civil

---

[2] Carter is not a medical expert, so her affidavit cannot establish the standard of care, prove a breach of the standard of care, or that the breach caused her injuries. For that, she would need an affidavit from a medical expert. *See Thomas v. Lewis*, 289 So. 3d 734, 740 (¶18) (Miss. 2019) ("The plaintiff must establish through expert testimony the acceptable standard of care in medical malpractice cases.").

Procedure were deemed admitted.

¶7.     On March 26, 2021, the circuit judge held a hearing on Total Foot Care and Dr. Zaleski's motion.  At the hearing, the circuit court ordered both parties to provide supplemental briefing on whether responses to requests for admissions filed in federal court can serve as responses to "similar or the same" requests for admissions filed in circuit court.

¶8.     On May 20, 2021, prior to the circuit court's ruling on the summary judgment motion, Carter attempted to respond to Total Foot Care and Dr. Zaleski's requests for admissions. In her response, Carter did not admit or deny any of the requested admissions.  Instead, her response, as alleged by Total Foot Care and Dr. Zaleski, was merely a copy of each of their requested admissions.[3]

¶9.     On June 4, 2021, after reviewing the supplemental briefing, the trial court granted summary judgment with prejudice for Total Foot Care and Dr. Zaleski because Carter failed to respond to the requests for admissions.  The circuit court also noted that Total Foot Care and Dr. Zaleski never served requests for admissions on Carter in the federal case. Regardless, the circuit court found Carter was required to respond to the requests for admissions when she was served on December 8, 2020, and since the matters within them

---

[3] It is undisputed that Carter failed to timely respond to the requests for admissions. On May 20, 2021, Carter did file "Plaintiff's Response to Defendant[']s [Requests for Admissions]."  Carter forwarded those "responses" to counsel for Total Foot Care and Dr. Zaleski.  Total Foot Care and Dr. Zaleski filed a motion to strike.  As part of that motion, they attached Carter's proposed responses.  The document attached simply repeated the requests and literally had no responses.  It is inconceivable how a pleading can be entitled "Plaintiff's Response" when it did not provide responses within that document.  Be that as it may, the circuit court never ruled on the motion to strike, but that is of no consequence because Carter's "responses" did not deny the requests.

5

were deemed admitted, the issue of the standard of care was conclusively established. Carter appealed.

¶10.    Carter raises a number of issues on appeal. Specifically, Carter argues: (1) the trial court erred in granting summary judgment when there were "material and substantial disputes" about the medical standard of care; (2) the trial court erred in granting summary judgment when the "[d]efendants did not have the required properly supported elements" to grant summary judgment; (3) the trial court erred in stating that Total Foot Care and Dr. Zaleski "subsequently filed a motion for reconsideration when there is not a motion for reconsideration found on the docket;" (4) the trial court erred in failing to rule on Carter's motion to consolidate; (5) the trial court erred in finding that Carter "did not comply with [d]iscovery;" (6) the trial court abused its discretion in granting the motion for summary judgment; and (7) Carter's "discovery dispute motion that was properly filed December 9, 2020 and noticed for a hearing before the court on June 4, 2021, but was cancelled by [Total Foot Care and Dr. Zaleski] at or around 3:48, [on] Friday, May 28, 2021, before [the] Memorial Day extended weekend, was unfair adjudication by the [c]ourt when the [c]ourt turned around that very same scheduled hearing date of June 4, 2021 and granted summary judgment to Appellees as though no such motions and hearing was on the Court[']s calendar."[4] In essence, there is only one issue before this Court: whether the trial court erred in granting summary judgment for Total Foot Care and Dr. Zaleski. We find it did not err.

---

[4] As stated above, upon review of the motion filed on December 9, 2020, it appears to be a motion for "consolidation of discovery" rather than a request for additional discovery.

6

Therefore, since that issue is dispositive as to all other issues raised, we will only address summary judgment.

## ANALYSIS

¶11. A trial court's grant of summary judgment is reviewed de novo. *Miss. Baptist Health Systems Inc. v. Harris*, 320 So. 3d 484, 487 (¶14) (Miss. 2021). "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2020) (quoting *Karpinsky v. Am. Nat'l Ins. Co.* 109 So. 3d 84, 89 (¶11) (Miss. 2013)). A trial court should grant summary judgment if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "To be exact, the content of summary-judgment evidence must be admissible at trial . . . ." *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1043 (¶14) (Miss. 2015). The evidence is viewed in the light most favorable to the non-moving party. *Miss. Baptist Health Systems Inc.*, 320 So. 3d at 487 (¶14).

¶12. In order to establish a prima facie medical-malpractice case, Carter had to prove that: (1) Dr. Zaleski had a duty to "conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury"; (2) Dr. Zaleski failed to conform to the required standard; and (3) Carter's injury was "proximately caused by the breach of such duty by" Dr. Zaleski. *Knight v. Tyler Holmes Mem'l Hosp.*, 201 So. 3d 1088, 1093 (¶15) (Miss.

7

Ct. App. 2016) (quoting *Vicksburg Healthcare v. Dees*, 152 So. 3d 1171, 1174 (¶9) (Miss. 2014)). Carter was required to prove each element of medical malpractice through expert testimony. *Tobias v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 1188, 1190 (¶6) (Miss. Ct. App. 2019) (quoting *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 523 (¶12) (Miss. 2019) (stating that "the plaintiff must demonstrate each of these [medical malpractice] elements through medical expert testimony, and the expert must establish that the breach was the proximate cause or the proximate contributing cause of the alleged injuries")). Carter's affidavit explaining the injuries she suffered did not establish the elements of medical malpractice. Carter is not a medical expert. Instead, she needed expert testimony. Dr. Boykins's expert report did not suffice as it was not an affidavit nor was it made under oath. *See Lowery v. Harrison Cnty. Bd. of Supervisors*, 891 So. 2d 264, 266 (¶8) (Miss. Ct. App. 2004) (stating that an "issue of fact is present to overcome a motion for summary judgment where the parties *swear* to their version with facts that must be admissible in evidence").

¶13. Regardless of whether Carter's response to summary judgment created a genuine issue of material fact as to the standard of care and medical causation, her failure to timely respond to Total Foot Care and Dr. Zaleski's requests for admissions resulted in her admitting and conclusively establishing that Dr. Zaleski did not breach the standard of care. On appeal, Carter argues that the trial court erred in granting summary judgment in favor of Total Foot Care and Dr. Zaleski when it found that Carter's failure to respond to the requests for admissions established that Dr. Zaleski did not breach the standard of care.

¶14. Rule 36 requires a party to respond to a request for admission "within thirty days after

8

the service of the request" or else the "matter is admitted." M.R.C.P. 36(a). "A matter that is deemed admitted does not require further proof." *Williams v. Williams*, 224 So. 3d 1282, 1284 (¶7) (Miss. Ct. App. 2017) (quoting *Locklear v. Sellers*, 126 So. 3d 978, 981 (¶7) (Miss. Ct. App. 2013)). "Any matter admitted under this rule is **conclusively established** unless the court on motion permits withdrawal or amendment of the admission." M.R.C.P. 36(b) (emphasis added); *see also Montgomery v. Stribling*, 115 So. 3d 823, 828 (¶15) (Miss. Ct. App. 2012) (stating that a matter that is deemed admitted will be conclusively established "unless and until the trial court allows amendment or withdrawal by motion under Rule 36(b)" (quoting *DeBlanc v. Stancil*, 814 So. 2d 796, 800 (¶17) (Miss. 2002))). Carter never filed a motion to withdraw or amend the admissions.

¶15. Carter's case is almost identical to *DeBlanc*. In *DeBlanc*, the Mississippi Supreme Court held that a trial court judge did not err in granting summary judgment in a dispute over real property based on admissions that were conclusively established because of a party's failure to timely respond to a request for admissions. *Id*. at 802 (¶27). Stancil executed two deeds conveying land to the DeBlancs. *Id*. at 797 (¶2). Years later, Stancil brought an action against the DeBlancs to set aside the two deeds. *Id*. at (¶3). Stancil served the DeBlancs with requests for admissions, asking them to admit that "there had been no consideration for the two deeds, and, more directly to the ultimate issue as things turned out, that the deed to the larger tract was an error and should have conveyed only an easement and should be set aside." *Id*. The DeBlancs failed to timely respond, and Stancil moved for summary judgment, basing almost her entire motion on the deemed admissions. *Id*. at (¶4). A month

9

later, the DeBlancs responded to the admissions and denied all of them. *Id.* Two months later, the DeBlancs responded to Stancil's motion for summary judgment. *Id*. at (¶5). They attached an affidavit from the attorney who drafted the two deeds at issue. *Id.* at 798 (¶5). In the affidavit, the attorney stated that Stancil expressed her intention to convey both tracts of land to the DeBlancs. *Id.* However, the DeBlancs never filed a motion to amend or withdraw their admissions. *Id.*

¶16.    During the *DeBlanc* appeal, the issue before the Supreme Court was whether the trial court erred in granting a motion for summary judgment based upon "a failure to timely respond to a request for admissions." *Id*. at (¶11). The DeBlancs never filed a motion to withdraw or amend their admissions and attached an affidavit to their response to summary judgment that contained contradictory evidence to the request for admissions. *Id*. The Supreme Court ultimately found that the trial court did not err in granting summary judgment. *Id*. at 802 (¶27).

¶17.    In its reasoning, the Supreme Court explained that Rule 36 is "straightforward in its terms." *Id*. at 798 (¶12). The court stated that "[m]atters admitted by default under Rule 36(a) are established **unless and until** the trial court allows amendment or withdrawal by motion under Rule 36(b)." *Id*. at 800 (¶17) (emphasis added). The court continued, explaining that Rule 36(b) is "identical" to Federal Rule of Civil Procedure 36(b). *Id*. at 801 (¶25). The court explained that the federal rule, as it was written when *DeBlanc* was decided, stated that "[a]ny admission that is not amended or withdrawn **cannot be rebutted by contrary testimony** or ignored by the court even if the party against whom it is directed

offers more credible evidence." *Id*. (quoting F.R.C.P. 36(b)) (emphasis added). The court acknowledged that the application of Rule 36 can be harsh, but attorneys can ameliorate the harshness by moving to withdraw or amend admissions. *Id*. at 801-02 (¶26). The court ultimately found that because the DeBlancs never filed a motion to amend or withdraw the admissions, the trial court had the authority to rule that these admissions were "conclusively established." *Id*. at 802 (¶27). The court also acknowledged the affidavit of the attorney that was contradictory to Stancil's claims: "Because the trial court made a ruling within its authority under Rule 36, the attorney's affidavit **could not be used to negate the admissions**, even though the affidavit may be viewed as contradictory." *Id*. (emphasis added). The court affirmed the trial court's grant of summary judgment.

¶18.    Carter's case is also similar to *Triangle Construction Company Inc. v. Foshee Construction Company Inc.*, 976 So. 2d 978 (Miss. Ct. App. 2008), a case where this Court affirmed a trial court judge's granting of summary judgment when the plaintiff failed to respond to the defendant's requests for admission until after the defendant filed a motion for summary judgment. *Id*. at 980 (¶1). In *Foshee*, Triangle sued Foshee for money owed on multiple construction projects. *Id*. at (¶3). On April 12, 2006, Foshee served Triangle with propounded interrogatories, requests for production, and requests for admissions. *Id*. at 981 (¶5). Triangle did not answer timely, so Foshee filed a motion for summary judgment, arguing that there was no genuine issue of material fact since Triangle's failure to respond to the requests for admissions caused those requests to be deemed admitted. *Id.* In response to Foshee's motion, Triangle moved to withdraw the admissions and responded to Foshee's

11

requests for admissions. *Id*. However, the trial court granted Foshee's motion for summary judgment. *Id.*

¶19.    During the *Foshee* appeal, the issue before this Court was whether the trial court erred in deeming the requests for admission admitted because of Triangle's failure to timely respond and in granting summary judgment for Foshee. *Id*. This Court affirmed the trial court's decision. *Id*. at 983 (¶13). In affirming the trial court, this Court noted that Rule 36 requires a party to respond to requests for admissions within thirty days of service of the request. *Id*. at 981 (¶6). This Court agreed with the trial court that Triangle did not file its responses or a motion to withdraw the admitted requests until after Foshee moved for summary judgment. *Id*. at (¶8). Additionally, Triangle's "late responses seemed to have been produced with the intent to circumvent the effects of summary judgment." *Id*. at 982 (¶8).

¶20.    Like both the *DeBlanc* and *Foshee* cases, Carter failed to timely respond to Total Foot Care and Dr. Zaleski's requests for admissions. Any evidence or responses that Carter presented were not provided until after Total Foot Care and Dr. Zaleski's motion for summary judgment had been filed. Therefore, the admission that Dr. Zaleski did not breach the standard of care when he removed Carter's toe had been conclusively established. Total Foot Care and Dr. Zaleski were not required to provide any additional proof. *See Williams*, 224 So. 3d at 1284 (¶7). Further, the trial court did not have to consider Carter's affidavit or expert report because they "could not be used to negate the admission" that Dr. Zaleski did not breach the standard of care, even though the affidavit and expert report could be

12

"viewed as contradictory." *See DeBlanc*, 814 So. 2d at 802 (¶27). Carter's failure to timely respond to the requests for admissions left her with an impossible ability to prove a prima facie case for medical malpractice and eliminated any genuine issue of material fact as to whether Dr. Zaleski breached the standard of care.

¶21.   Additionally, Carter failed to move to amend or withdraw her admissions before Total Foot Care and Dr. Zaleski moved for summary judgment. In fact, Carter failed to make any response to the requests until over five months after she was served with them. Therefore, it was conclusively established that Dr. Zaleski did not breach the standard of care when he removed Carter's gangrenous toe.

¶22.   Carter also argued that she did not have to respond to Total Foot Care and Dr. Zaleski's discovery requests because she moved to consolidate discovery from the federal court proceeding to prevent "repetitive discovery." However, the trial court never ruled on this motion. "A moving party has a duty to ensure [her] motion is heard and that a ruling on the motion is obtained." *Hutto v. State*, 277 So. 3d 963, 990 (¶95) (Miss. 2007). Filing a motion is quite simply not enough.

¶23.   Further, Carter's argument that she should be able to rely on the discovery conducted in a separate, federal action is without merit. Rule 36(b) states, "Any admission made by a party under this rule is for the purpose of the **pending action only** and is not an admission by him for any other purpose **nor may it be used against him in any other proceeding**." M.R.C.P. 36(b) (emphasis added). Federal Rule of Civil Procedure 36(b) similarly says: "An admission under this rule is **not an admission for any other purpose** and cannot be **used**

**against the party in any other proceeding**." F.R.C.P. 36(b) (emphasis added). Both the Federal Rules of Civil Procedure and the Mississippi Rules of Civil Procedure explicitly state that admission for one case cannot be used in another separate case. Therefore, Carter's attempt to upload federal court discovery into the state court case was misguided. Finally, it is important to note that there were no requests for admissions filed in the federal case. Even if the court had granted Carter's motion, she still would have not had any filed responses to requests for admissions.

## CONCLUSION

¶24. Upon review of the record, this Court finds that there was no genuine issue of material fact as to whether Dr. Zaleski breached a standard of care when he removed Carter's left toe. Carter's failure to timely respond to Total Foot Care and Dr. Zaleski's requests for admissions resulted in a conclusive admission that Dr. Zaleski did not breach the standard of care. The trial court did not err in granting summary judgment.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

14